IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT
IN AND FOR VOLUSIA COUNTY, FLORIDA

MICHAEL ALHOFEN and  CASE NO.:
MYSHEL ALHOFEN

    Plaintiffs,

WAL-MART STORES EAST, LP,
a foreign limited partnership,

    Defendant.
_____/

## COMPLAINT

**COME NOW**, Plaintiffs, MICHAEL ALHOFEN ("Mr. ALHOFEN") and MYSHEL ALHOFEN ("Ms. ALHOFEN") (hereinafter referred to collectively as the "ALHOFENS" or "Plaintiffs'"), by and through his undersigned counsel, and hereby sue Defendant, WAL-MART STORES EAST, LP ("WAL-MART" or "Defendant"), and in support thereof, Plaintiffs state as follows:

### NATURE OF THE ACTION

1. This is an action brought by Plaintiffs which seeks compensatory damages for false imprisonment and malicious prosecution, including bodily and mental suffering, as well as lost wages and economic losses.

2. This is an action for false imprisonment and malicious prosecution. This Court has jurisdiction based upon the fact that this is an action for damages in excess of $30,000.00.

### PARTIES, JURISDICTION & VENUE

3. Plaintiff MR. ALHOFEN is a citizen of the state of Florida who currently resides in Deland, FL.

1

4. Plaintiff MS. ALHOFEN ALHOFEN is a citizen of the state of Florida who currently resides in Deland, FL.

5. At all material times hereto, Defendant, WAL-MART was and is a foreign limited partnership authorized to transact business in the State of Florida. The subject retail location is located at Walmart Supercenter (#1391), 1101 Beville Road, Daytona Beach, FL, 32119, in Volusia County, FL.

6. Venue is proper in Volusia County, Florida, as it is where the causes of action accrued.

## GENERAL ALLEGATIONS

7. Mr. Michael Alhofen and Ms. Myshel Alhofen are husband and wife.

8. Mr. Alhofen is a diabetic individual whose condition affects his ability to perform day-to-day tasks.

9. On May 17, 2018, Mr. Alhofen, who is visually impaired, and his wife, Ms. Alhofen visited their local Wal-Mart Superstore located at 1101 Beville Road, Daytona Beach, FL, 32119 (store no. 1391) to do some shopping.

10. Once they had acquired the items they were looking for, the Alhofens utilized the self-checkout terminals.

11. Mr. Alhofen stayed by the cart and handed Ms. Alhofen the items they had selected so that she could scan them.

12. Due to both of their advanced ages, and the health complications caused by Mr. Alhofen's diabetes, which includes poor eyesight due to cataracts and diabetic retinopathy, the Alhofens had some difficulty in scanning the items they wished to purchase.

13. The Alhofens asked for and received help from a Wal-Mart employee who, having observed that they were struggling with the terminal and their items, *assured them that the items were properly scanned.*

14. After having scanned all the items, and with the assurance of the Wal-Mart employee, Mr. Alhofen approached the terminal to pay for the items, and did so. At no point during the interaction with the employee, did the employee advise the Alhofens that there may have been items that were not scanned or scanned properly.

15. After making payment, and with no indication from the employee who had helped them scan their items that there was a problem, the Alhofens proceeded to leave the store with their purchased groceries.

16. Upon approaching the exit, the Alhofens were confronted by Brooke Kistler, acting within the course and scope of her position as the Wal-Mart Loss Prevention Officer.

17. Kistler, in front of other patrons and Wal-Mart personnel, accused the Alhofens of attempting to shoplift from the store.

18. Kistler remained belligerent and confrontational, even as Mr. Alhofen, first, attempted to provide his receipt; then, attempted to placate her by offering to pay for the items that were allegedly not scanned and paid.

19. Kistler persisted in her accusations even after Mr. Alhofen made her aware of the fact that a Wal-Mart employee had helped them scanned the items.

20. Wal-Mart, through Kistler, proceeded to forcibly detain Mr. and Ms. Alhofen in her office, a confined space separate from the main store. Kistler had a second Wal-Mart employee sit in during the detention purportedly as a "witness."

21. Mr. Alhofen, under the stress of the situation, became confused due his diabetes, and asked several times if he and his wife could leave, all the while offering to pay for whatever was allegedly not scanned and paid for when he was at the self-checkout terminal.

22. Wal-Mart held the Alhofens, against their will for approximately one hour, under the pretense that Wal-Mart management was calling law enforcement officers. However, no law enforcement officers showed up while the Alhofens were being held, and Wal-Mart eventually released the Alhofens.

23. In subsequent communications, Wal-Mart and its agents represented to the Alhofens that the incident has been resolved, and that no further action would be taken against them.

24. Eight (8) months later, Mr. Alhofen was arrested in the parking lot of Sonny's BBQ, in Deland, after only 2 days of work as a dishwasher. During the arrest, the police questioned Mr. Alhofen about the Wal-Mart incident—now eight (8) months passed.

25. The arrest occurred in front of all who were present at Sonny's BBQ—including his supervisor and fellow employees after being pulled out of his car. He consequently lost his job.

26. This incident caused Mr. Alhofen not only to lose a much needed job, but also great shame, and emotional distress.

27. Additionally, due to these charges, Mr. Alhofen lost out on other job opportunities including a custodial position at the Volusia Mall.

28. Mr. Alhofen was detained for five (5) hours at the Volusia County Jail in Daytona Beach, until he was able to post a five-hundred-dollar ($500.00) bond on a charge of retail theft in violation of Fl. Stat. §812.015. Mr. Alhofen filed an affidavit of indigence to be appointed counsel from the Office of the Public Defender in Volusia County.

29. At all times relevant, and in contradiction to direct prior communications with Mr. Alhofen from Wal-Mart, defendant indicated to the Volusia County State Attorney's office that it wished to proceed with prosecuting Mr. Alhofen.

30. Wal-Mart even purportedly furnished the State Attorney's Office with "evidence" and a witness list in support of its allegations.

31. The flagrant disregard for Mr. Alhofen's rights is highlighted by that fact that, had Wal-Mart, or any of its agents, taken the time to review the evidence, they would have realized again that there had been no theft by the Alhofens.

32. Nolle Prosequi was handed down by the Volusia County State Attorney's Office on March 12, 2019, which effectively dismissed the charges brought against Mr. Alhofen.

## COUNT I
## FALSE IMPRISONMENT OF THE ALHOFENS

33. Plaintiff incorporates by reference the allegations of Paragraphs 1 through 23 as if fully set forth herein.

34. This is an action for compensatory damages against Defendant.

35. The Alhofens were unlawfully detained and deprived of their liberty when Wal-Mart, through its employee acting in her course and scope of employment forcibly sequestered the Alhofens in her office under allegations of theft and threat of arrest, because they had not stolen, or attempted to steal any items.

36. As was stated above, when the Alhofens experienced difficulty scanning their items at the self-checkout terminal, they enlisted the aid of a Wal-Mart employee who helped them scan all of their items.

37. The Wal-Mart employee did not advise the Alhofens of any issues with their items, and his help with the scanning of the items would have been easily observed by the Loss Prevention Officer on the store security cameras.

38. Wal-Mart had no probable cause to detain the Alhofens.

39. The Alhofens were being held against their will, because they repeatedly asked if they could leave but was told they could not as Wal-Mart management was calling law enforcement.

40. The Alhofens were held for approximately an hour until they were released without any explanation. No officer with any law enforcement agency showed up while the Alhofens were being detained.

41. Whatever reason Wal-Mart could offer to support probable cause is undercut by the obvious fact that the Alhofens had not been the ones scanning the subject items; but rather, it was Wal-Mart employee who helped them scan and bag their items. Moreover, the employee never indicated to the Alhofens that there was any scanning problem. In fact, she indicated just the opposite, i.e., that all the items bagged had been correctly scanned.

42. For the reasons stated above, Wal-Mart's actions were unreasonable under the circumstances because no reasonable person would have concluded that by enlisting the aid of a Wal-Mart employee the Alhofens were trying to steal items from the store. Furthermore, Wal-Mart actions are even more reprehensible and unreasonable in light of the fact that its Loss Prevention Officer did not take the time to investigate her accusations when the Alhofens provided her with the receipt of their purchase.

**WHEREFORE** the Plaintiffs respectfully request that this Court enter judgment in favor of the Plaintiffs and against the Defendant, WAL-MART STORES EAST, LP, for an award of

compensatory damages, including bodily and mental pain and suffering, emotional distress and humiliation, and for all other damage caused by the Defendant's false imprisonment of the Plaintiffs.

## COUNT II
## MALICIOUS PROSECUTION OF MICHAEL ALHOFEN

43. Plaintiff incorporates by reference the allegations of Paragraphs 1 through 32 as if fully set forth herein.

44. This is an action for compensatory damages including bodily and mental suffering, emotional distress, humiliation, lost wages, and economic losses against Defendant.

45. Wal-Mart initiated criminal proceedings against Michael Alhofen by submitting a criminal complaint with the Daytona Beach Police Department, on or about May 17, 2018.

46. At all times relevant, Wal-Mart was the legal cause of the aforementioned criminal prosecution as it was at their behest that a criminal complaint was filed with the Daytona Police Department, which, in turn, resulted in a charging affidavit from the Volusia County State Attorney's Office.  Further, it was Wal-Mart's decision to pursue criminal prosecution or not, and Wal-Mart decided to move forward with criminal prosecution.

47. Mr. Alhofen was charged with petit theft of a merchant, in violation of Fla. Stat. sec. 812.015(1)D, a misdemeanor, as contained in the criminal prosecution, Case No., 2018-316166.

48. The case was dismissed on March 12, 2019 via a Nolle Prosequi handed down by the Volusia County State Attorney's Office. This act effectively terminated the criminal case in favor of Mr. Alhofen.

49. The circumstances are such that no reasonable person would have concluded that the Alhofens were attempting to steal because the Alhofens were aided by a Wal-Mart

7

employee when they were scanning their items and bagging them. Additionally, they paid for the items believing in good faith that all items had been scanned properly. Lastly, the fact that the State Attorney dismissed the case, works in tandem with the above-stated facts to show that there was no probable cause to detain the Alhofens, or initiate criminal proceedings on charges of retail theft.

50. Wal-Mart acted with legal malice when it initiated the criminal proceedings against the Alhofens. Wal-Mart actively refused to consider exculpatory evidence presented by Mr. Alhofen in the form of the receipt the Wal-Mart employee who could have easily verified that she had assisted the Alhofens without incident.

51. After releasing the Alhofens with no explanation, and communicating to them that the matter was resolved, Wal-Mart nonetheless actively pursued criminal prosecution against Mr Alhofen knowing the matter lacked probable cause.

52. Mr. Alhofen suffered great personal and economic injury due to this entire ordeal. He was humiliated in front of his future co-workers and supervisor, and the community at large when he was arrested in public in front of his future place of employment. Subsequently, Mr. Alhofen lost his position as a dishwasher and lost other opportunities for employment due to the arrest.

**WHEREFORE** the Plaintiff respectfully requests that this Court enter judgment in favor of MICHAEL ALHOFEN and against Defendant, WAL-MART STORES EAST, LP, an award of compensatory damages, including bodily and mental pain and suffering, emotional distress, lost wages and other economic losses for the damage caused by Defendant's malicious prosecution of the Plaintiffs.

## DEMAND FOR JURY TRIAL

53. Plaintiff demands trial by jury on all counts.

**DATED** this 20th day of August, 2020.

    /s/ Richard W. Smith
Richard W. Smith
Florida Bar Number: 13943
**NEJAME LAW, P.A.**
189 South Orange Avenue, Suite 1800
Orlando, FL 32801
Phone: 407-500-0000
Fax: 407-802-1641
civilservice@nejamelaw.com
richard@nejamelaw.com
laurie@nejamelaw.com
Counsel for Plaintiffs